UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIVER PARK PLACE
CONDOMINIUM ASSOCIATION,

     Plaintiff,

                            Case No. 22-cv-10526
v.                           Honorable Linda V. Parker

FEDERAL INSURANCE COMPANY,
MARVIN WOODS, SEBRINA THOMAS,
DEBORAH COKLOW, BEVERLY HOGAN,
RAHJINA JOHNSON, LEONARD JOHNSON,
and TOI JOHNSON,

     Defendants.
_____/

## OPINION AND ORDER GRANTING FEDERAL INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(c)

This action arises from an insurance policy issued by Defendant Federal

Insurance Company ("Federal") to Plaintiff River Park Place Condominium

Association ("Association").  In a Complaint filed in state court on February 4,

2022, the Association seeks a declaration as to Federal's contractual duty to defend

and indemnify the Association with respect to two state-court lawsuits and claims

damages for Federal's alleged breach of the policy by refusing to defend and

indemnify the Association.  Federal removed the Association's Complaint to this

Court on March 11, 2022.

On March 9, 2023, Federal filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (ECF No. 13.)  On November 17, after the motion was fully briefed (ECF Nos. 16, 18), the matter was reassigned to the undersigned pursuant to Administrative Order 23-AO-059.  Finding the facts and legal arguments adequately presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court is granting Federal's motion.

## I.   Standard of Review

A Rule 12(c) motion is subject to the same standard of review as a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (citing *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)).  A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Erickson v. Pardus*,

2

551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions, however.  *Iqbal*, 556 U.S. at 668.  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) or Rule 12(c) motion to dismiss.  *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)).  A court that considers such matters must first convert the motion to dismiss to one for summary judgment.  *See* Fed. R. Civ. P 12(d). However, the court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## II.   Factual and Procedural Background

### A.   The Parties & Policy

The Association administers the affairs and maintains the common elements of the River Park Place Condominiums in Detroit, Michigan.  (ECF No. 1-2 at PageID. 23, ¶ 10.)  Federal issued an insurance policy to the Association, No. 9983-4561, with an effective policy period of July 18, 2021 to July 18, 2022

3

("Policy").  (*Id*. ¶ 9; *see also id.* at PageID. 29-71.)  The named defendants are residents of River Park Place.  (*Id*. at PageID. 22-23, ¶ 5.)

**B.**     **The 2014 and 2019 Lawsuits**

On May 30, 2014, the Association filed a lawsuit against Rahjina Johnson ("Rahjina") in state court ("2014 Lawsuit").[1]  (*See id*. at PageID. 78, ¶ 18.)  The 2014 Lawsuit settled and was dismissed on March 15, 2016.  (*Id*. ¶ 19.)  According to the transcript of the settlement hearing, the 2014 Lawsuit involved allegations of a "tainted" Association election.  (*Id*. at PageID. 183.)

On February 6, 2019, the Association filed another lawsuit against Rahjina and Leonard Johnson in state court, which also involved a dispute over Association election results ("2019 Lawsuit").  (*Id*. at PageID. 78, ¶ 20); *see also*

*https://cmspublic.3rdcc.org/CaseDetail.aspx?CaseID=3737407*.  The state court dismissed the 2019 Lawsuit with prejudice and without costs on October 23, 2019. (ECF No. 1-2 at PageID. 78 ¶ 21; *see also id.* at PageID. 187-89.)  The dismissal order reflects the state court's determination that Rahjinah, Leonard, Deborah Coklow, Toi Johnson, and Dorothy Wallingford were duly elected to the Association's board of directors during the Association's June 18, 2019 annual meeting.  (*Id*. at PageID. 187.)

---

[1] The Court utilizes first names as several individual defendants share the same last name.

### C.   *Woods* Complaint

On July 26, 2021, Marvin Woods, Sebrina Thomas, Coklow, and Beverly Hogan ("*Woods* plaintiffs") filed a Complaint in state court against the Association, Rahjinah, Leonard, and Toi.  (*Id.* at PageID. 73-89.)  The *Woods* plaintiffs allege that, as directors of the Association, Rahjinah, Leonard, and Toi authorized payments to Rahjinah and Leonard and charges to the *Woods* plaintiffs, the latter of which were then recorded as liens on the *Woods* plaintiffs' real property.  (*See generally id.*)  Exhibits attached to the Complaint now pending before this Court reflect that the payments to Leonard and Rahjinah were reimbursements for certain costs, assessments, fees, and/or fines arising from the 2014 Lawsuit and/or the 2019 Lawsuit.  (*See e.g., id.* at PageID. 193, 197-200.) The exhibits also reflect that the charges to the *Woods* plaintiffs were to reimburse the Association and/or Rahjinah, Leonard, and Toi for the attorney fees incurred in the 2014 Lawsuit and 2019 Lawsuit.  (*See id.* at PageID. 215-229.)

The *Woods* plaintiffs allege that these payments and charges were made in violation of Michigan law.  (*See generally id.*)  They seek an accounting of the Association's books and records, allege breach of Association documents, conversion, quiet title/slander, negligence/gross negligence, and defamation.

The *Woods* plaintiffs further allege that Rahjinah defamed them in a May 5, 2021 letter to Association members, which she signed as President/Secretary of the

Association.  (*Id.* at PageID. 87-88, ¶ 72; *see also id*. at PageID. 233-36.)  In the letter, Rahjinah accuses Marvin and Deborah of "intentionally hurt[ing]" the condominium community and "spreading falsehoods," and Rahjinah asserts that they "can no longer steal, wrongfully foreclose, mismanage funds, or deceive th[e] community."  (*Id*. at PageID. 88, ¶ 72; *id*. at PageID. 233.)  Although the letter is not specific with respect to these allegations, the opening paragraph assures Association members that "[t]he current board will never waste co-owner's money using attorneys for matters we can solve on our own."  (*Id*. at PageID. 233.)

### D.   *Johnson* Lawsuit

On or about July 1, 2021, Leonard filed a lawsuit against Rahjinah, the Association, and the Association's property management company in state court.  (*Id.* at PageID. 24, ¶ 14; ECF No. 13-1 at PageID. 349.) The action arises from the destruction of a wooden privacy fence constructed on Leonard's property.  (ECF No. 13-1 at PageID. 356-57, ¶¶ 9-14.)  Leonard alleges that the destruction of the fence violated Michigan's Anti-Lockout Statute and constituted negligence and intentional infliction of emotional distress.  (*See generally id*.)

### E.   Request & Denial of Coverage

The Association tendered the *Woods* Lawsuit and *Johnson* Lawsuit to Federal for coverage.  (*See id*. at PageID. 24, ¶¶ 13, 16; *id.* at PageID. 242-51.) Federal thereafter informed the Association that it was denying coverage due to

6

exclusions in the Policy.  (*See id* at PageID. 242-51.)  With respect to its decision

regarding the *Woods* Lawsuit, Federal cited the exclusion set forth in Section III

paragraph (A)(2) of the Policy, which reads:

> The **Company** shall not be liable for **Loss** on account of any
> **Claim** directly or indirectly based upon, arising from, or in
> consequence of . . . any claim, demand, suit, . . . or other
> proceeding pending, or order, decree, or judgment entered for
> or against any **Insured** on or prior to the Pending or Prior
> Litigation Date set forth in item 7 of the Declarations, or the
> same or any substantially similar fact, circumstance, or
> situation underlying or alleged therein[.]

(*Id*. at PageID. 243; *see also id*. at PageID. 50 (emphasis in original throughout,

unless otherwise noted).)  The Pending or Prior Litigation Date in the Declarations

is July 18, 2019.  (*Id*. at PageID. 30, 243.)

For purposes of the Policy's Coverage Section, a "**Claim**" is defined to

include a "civil proceeding commenced by the service of a complaint or similar

pleading . . . against an **Insured** for a **Wrongful Act** . . .."  (*Id*. at PageID. 47,

§ II(A).)  Pursuant to the terms of the Policy, the Association and its elected

directors, officers, and employees are among the "Insured[s]."  (*See id.* at PageID.

48, § II(F), (H); PageID. 40, § II(F) (referencing PageID. 37).)  "**Loss**" is defined,

with exceptions not relevant here, as "the total amount which any **Insured**

becomes legally obligated to pay on account of any **Claim** made against any

**Insured** for **Wrongful Acts** for which coverage applies, including, but not limited

to, damages, judgments, settlements, pre-judgment and post-judgment interest and

**Defense Costs**." (*Id*. at PageID. 48, § II(*I*).) A " '**Wrongful Act**' means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by: (1) an **Insured Organization**; (2) an **Insured Person**, individually or otherwise, in their **Insured Capacity**, or any matter claimed against an **Insured Person** solely by reason of serving in such **Insured Capacity**; or any **Property Manager Wrongful Act**." (*Id*. at PageID. 49, § II(O).)

With respect to its decision regarding the *Johnson* Lawsuit, Federal cited the "Absolute Property Damage Exclusion" and the exclusion for claims related to emotional distress. (*See* ECF No. 325 at PageID. 325, 337-40 (quoting ECF No. 1-2 at PageID. 51, 71).) The Absolute Property Damage Exclusion reads: "The **Company** shall not be liable for **Loss** on account of any **Claim** where all or part of such **Claim** is directly or indirectly based upon, arising from, in consequence of, or in any way related to any **Property Damage**." (ECF No. 1-2 at PageID. 71.) "**Property Damage**" includes "damage or destruction of any tangible property[.]" (*Id*. at PageID. 49, § II(L).)

The exclusion for emotional distress provides, in relevant part: "The **Company** shall not be liable for **Loss** on account of any **Claim** where all or part of such **Claim** is directly or indirectly based upon, arising from, in consequence of, or in any matter related to any . . . mental or emotional distress (except with respect to

8

any otherwise covered **Claim** for **Employment Practices**) . . . . (*Id*. at PageID.

51.)

Federal moves for judgment on the pleadings, arguing that the cited

exclusions support its denial of coverage under the Policy.

## III. Applicable Law & Analysis

This Court has diversity jurisdiction over this insurance-coverage dispute,

and the parties agree that Michigan law governs the matter.  Under Michigan law:

> An insurance policy is much the same as any other contract.
> It is an agreement between the parties in which a court will
> determine what the agreement was and effectuate the intent of
> the parties.  *Eghotz v. Creech*, 365 Mich. 527, 530, 113
> N.W.2d 815 (1962).  Accordingly, the court must look at the
> contract as a whole and give meaning to all terms.  *Fresard v.
> Michigan Millers Mut. Ins. Co.*, 414 Mich. 686, 694, 327
> N.W.2d 286 (1982).  Further, "[a]ny clause in an insurance
> policy is valid as long as it is clear, unambiguous and not in
> contravention of public policy."  *Raska v. Farm Bureau Mut.
> Ins. Co. of Michigan*, 412 Mich. 355, 361-362, 314 N.W.2d
> 440 (1982).  This Court cannot create ambiguity where none
> exists.  *Edgar's Warehouse, Inc. v. United States Fidelity &
> Guaranty Co.*, 375 Mich. 598, 602, 134 N.W.2d 746 (1965).
>
> Exclusionary clauses in insurance policies are strictly
> construed in favor of the insured.  *Shelby Mut. Ins. Co. v.
> United States Fire Ins. Co.*, 12 Mich. App. 145, 149, 162
> N.W.2d 676 (1968).  However, coverage under a policy is lost
> if any exclusion within the policy applies to an insured's
> particular claims.  *Fresard, supra*, 414 Mich. at 695, 327
> N.W.2d 286.  Clear and specific exclusions must be given
> effect.  It is impossible to hold an  insurance company liable
> for a risk it did not assume.  *Kaczmarck v. La Perriere*, 337
> Mich. 500, 506, 60 N.W.2d 327 (1953).

*Auto Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433-34 (Mich. 1992); *see also Hunt v. Drielick*, 852 N.W.2d 562, 565-66 (Mich. 2014).

The insured bears the burden of establishing that its claim falls within the terms of the policy. *Hunt*, 852 N.W.2d at 565 (citing *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 510 (Mich. 1995)). The insurer, on the other hand, "'bear[s] the burden of proving an absence of coverage.'" *Id.* (quoting *Fresard*, 327 N.W.2d at 289). Federal satisfies its burden here.

First, the Court addresses the Association's assertion that it "has not had the benefit of discovery regarding Federal's issuance of th[e] Policy and the Association's application process with Federal." (*See* ECF No. 16 at PageID. 401.) The Sixth Circuit has recognized, however, that "[t]he very purpose of [a Rule 12 motion to dismiss] 'is to enable defendants to challenge the legal sufficiency of the complaints without subjecting themselves to discovery.'" *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (quoting *Rutman Wine Co. v. E & J Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)). In any event, the Association identifies no facts relevant to assessing the Policy's coverage which need to be uncovered through discovery. More specifically, the Association fails to specify how Federal's issuance of the Policy or the application process might influence the Court's interpretation of this insurance contract. The Policy's terms are clear and unambiguous, "and the plain meaning of the terms may not be

10

impeached by extrinsic evidence." *Zurich Ins. Co. v. CCR & Co.*, 576 N.W.2d 392, 395 (Mich. Ct. App. 1997) (citing *Mich. Chandelier Co. v. Morse*, 297 N.W.2d 64, 67 (1941)).  The Court therefore turns to whether the *Woods* Lawsuit and *Johnson* Lawsuit are excluded from coverage under the Policy.

Starting with the *Woods* Lawsuit, it is a civil proceeding against the Association and some of its elected directors ("**Insured[s]**") for errors, breach of duty, acts, and/or omissions (i.e., a "**Wrongful Act**").  Thus, it is a "**Claim**" and it poses a "**Loss**" (i.e., an amount the defendants may "become[] legally obligated to pay on account [of the lawsuit]").  Further, the *Woods* Lawsuit is "directly or indirectly based upon, aris[es] from, or [is] in consequence of" a "claim" or "suit" "prior to [July 18, 2019]" . . ..  *See* ECF No. 1-2 at PageID. 47, 50.)  More specifically, the *Woods* plaintiffs allege that Rahjinah, Leonard, and Toi, in their capacity as elected directors on the Association's board, wrongfully reimbursed Rahjinah and Leonard for costs and attorney's fees incurred defending the 2014 Lawsuit and the 2019 Lawsuit, and charged the *Woods* plaintiffs for attorney's fees incurred by the Association defending those lawsuits.

The Association argues that the exclusion does not apply because the 2014 Lawsuit and the 2019 Lawsuit are not "**Claim[s]**."  (*See* ECF No. 16 at PageID. 403.)  However, the terms "claim" and "suit" in paragraph (2) of the exclusions section appear in plain text.  (*See id.* at PageID. 47.)  Words in plain text

unambiguously do not share a policy-specific or specialized meaning assigned to words in bold text.  *See, e.g.*, *Certain Underwriters at Lloyd's v. LM Ericsson Telefon, AB*, 272 S.W.3d 691, 696-97 (Tex. Ct. App. 2008) ("But we do not think any reasonable reader would construe '**you**' to have the meaning assigned to 'you.' They are the same words, but they are, in effect, different terms."); *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 388 (Colo. 1997) (en banc) ("In contrast, 'pedestrian' as used in the anti-stacking provision within the UM coverage section is not in bold italic typeface.  Such contrast indicates that the parties only intended the technical definition of 'pedestrian' to apply in the No-Fault section where it does appear in bold italics, and its ordinary meaning to apply in the UM section."); *Silverman v. Econ. Fire & Cas. Co.*, 650 N.E.2d 603, 605 (Ill. App. Ct. 1995) (additional quotation marks and citation omitted) ("We reject [the insurer]'s argument that 'loss' has the same meaning everywhere it appears in the policy, boldface type or not.  The policy carefully and sensibly limits the applicability of the defined '**loss**.' . . . We believe [the insurer]'s decision to place a non-boldface type 'loss' in the limitations clause was purposely inserted and that the language was not employed idly."); *see also Auto-Owners Ins. Co. v. Kammerer*, 386 F. Supp. 3d 1030, 1034 (D. Minn. 2019) (the general rule is that "words appearing in plain text unambiguously do not share a policy-specific or specialized meaning assigned to words in bold text").

Thus, the Court concludes that, by its plain and ordinary meaning, the prior litigation exclusion in Section III(A)(2) of the Policy precludes coverage for the *Woods* Lawsuit.

Turning to the *Johnson* Lawsuit, the Association argues that while "the Absolute Property Damage [E]xclusion may bar coverage for the damage to the privacy fence itself, it does not exclude defense and indemnity for the many other 'Wrongful Acts' asserted in the [lawsuit]." (ECF No. 16 at PageID. 409.)  This argument, however, ignores the plain and unambiguous language of the exclusion, which excludes coverage "on account of any **Claim** where all *or part* of such **Claim** is directly or *indirectly based upon, arising from, in consequence of, or in any way related to* any **Property Damage**." (ECF No. 1-2 at PageID. 71 (italics added).)

At least "part of" the *Johnson* Lawsuit is "directly or indirectly . . . related to the destruction of Leonard's privacy fence.  In fact, all of the alleged **Wrongful Act[s]** are related to or arose from the destruction of the fence.  Leonard's assertions of wrongful entry and trespass refer to the defendants' access to his property *to destroy the fence*. (*See* ECF No. 13-1 at PageID. 357, 35960, ¶¶ 10, 13-14, 19-21, 23.)  Leonard alleges that his mental anguish and emotional distress were *caused by* the destruction of the fence.  (*See id.* at PageID. 358, 360-61,

¶¶ 17, 26-30.)  Thus, the Absolute Property Damage Exclusion precludes coverage

of the *Johnson* Lawsuit.

Further, coverage is excluded under Section III(D) of the Policy, which

reads in relevant part:

> The **Company** shall not be liable for **Loss** on action of any **Claim** where all *or part* of such **Claim** is directly or indirectly based upon, arising from, in consequence of, or in any manner related to any . . . mental or emotional distress (except with respect to any otherwise covered **Claim** for **Employment Practices**) . . ..

(ECF No. 1-2 at PageID. 51 (italics added).)  Although intentional infliction of

emotional distress is only one of several claims asserted in the *Johnson* Lawsuit,

"part of" the lawsuit is undisputedly "directly . . . based upon . . . mental or

emotional distress."

In short, the Court holds that the Policy excludes coverage for the *Woods*

Lawsuit and *Johnson* Lawsuit.

Accordingly,

**IT IS ORDERED** that Federal Insurance Company's motion for judgment

on the pleadings (ECF No. 13) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 2, 2024

14